Stephen D. Finestone (125675)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, CA 94104
Tel.:    (415) 421-2624
Fax:    (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: rwitthans@fhlawllp.com

Attorneys for Appellee
Evander Frank Kane

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>EVANDER FRANK KANE,<br><br>Debtor. | Case No. 21-cv-03765-WHO<br><br>Bankruptcy Case No. 21-50028-SLJ<br>Chapter 7 |
| ZIONS BANCORPORATION, N.A.,<br>dba California Bank & Trust,<br><br>Appellant<br><br>v.<br><br>EVANDER FRANK KANE,<br>Appellee | **NOTICE OF MOTION AND APPELLEE'S MOTION TO DISMISS APPEAL AS MOOT**<br><br>Hearing:<br>Date:   March 30, 2022<br>Time:   2:00 p.m. Pacific Time<br>Place:  Tele/Videoconference (Zoom)<br><br>**Remote appearances only.**<br><br>*Please check www.cand.uscourts.gov for information regarding the Court's operations due to the COVID-19 pandemic.* |

**TO THE HONORABLE WILLIAM H. ORRICK, DISTRICT COURT JUDGE; AND**

**APPELLANT ZIONS BANCORPORATION, N.A.:**

    **PLEASE TAKE NOTICE** that on March 30, 2022, at 2:00 p.m., before the Honorable

William J. Orrick, of the United States District Court for the Northern District of California,

Appellee Evander Frank Kane ("Kane") will move the Court, pursuant to Federal Rule of

Appellate Procedure 27(a), to dismiss the appeal by Appellant Zions Bancorporation, N.A.

("Zions") of the bankruptcy court's *Order Denying Motion to Convert* Kane's Chapter 7[1]

bankruptcy case to Chapter 11 and to appoint a Chapter 11 trustee (the "Conversion Order") as

moot.

## I.     INTRODUCTION

This appeal stems from the bankruptcy court's decision denying Zions' motion to convert

Kane's Chapter 7 case to a Chapter 11 case (the "Conversion Motion").  Zions argued that

Kane's professional contract, which at the time had five years remaining on it, required the case

to be converted to Chapter 11, with the appointment of a trustee to then administer Kane's

income.  Having lost in the bankruptcy court, Zions appealed to this Court and asks it to reverse

the decision and require the conversion of the case to Chapter 11.

Recent developments render this case moot and Kane moves to have the appeal dismissed

on those grounds.  On or about January 8, 2022, Kane's employer, the San Jose Sharks (the

"Sharks"), terminated Kane's contract. As such, this appeal is moot because the contract on

which the Conversion Motion relied, no longer exists.  While Kane contends the bankruptcy

court's decision was correct and should be affirmed on appeal for the reasons stated in the

bankruptcy court's decision, it is not necessary to reach the issue in light of the Sharks'

termination of Kane's contract.

## II.     BACKGROUND

This appeal and the related appeal by South River Capital, LLC[2] ("South River") arise

from the bankruptcy court's denial of Zions' Conversion Motion. Appellant's Opening Br., p. 9

When Kane filed his Chapter 7 bankruptcy case on January 9, 2021 (the "Petition Date"),

Kane was a professional hockey player under contract with the Sharks. ZionsER-037, 040, 131-

149. Under that contract (the "NHL Contract"), the Sharks contracted with Kane for eight league

years commencing in 2018 and ending in 2025. ZionsER-131. On February 26, 2021, Zions,

subsequently joined by several other creditors, moved to convert Kane's Chapter 7 case to

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532.
[2] *South River Capital, LLC v. Evander Frank Kane (In re Kane)*, N.D. Cal. No. 3:21-cv-03493-WHO.

Chapter 11 to bring Kane's future earnings into the bankruptcy estate and to appoint a Chapter 11 trustee to administer the estate. ZionsER-108–126, 192-197, 198-234, 235-237, 238-241. Zions' Conversion Motion offered scant justification, arguing that Kane's case should be converted, in large part, because Kane had the ability to pay his creditors based on Zions' misunderstanding about the provisions of Kane's contract with the Sharks and focusing its lofty expectations about what Kane was scheduled to earn over the next four to five years on his gross compensation.

The Conversion Motion, which South River and other creditors joined, argued that the anticipated future income from the NHL Contract was a basis to convert to Chapter 11. Zions also sought to appoint a Chapter 11 trustee to control Kane's income, providing him enough to pay his living expenses, while distributing the balance to creditors. The bankruptcy court found Zions' argument unconvincing for a variety of reasons set forth in the Conversion Order. ZionsER-360–387. Significantly, the bankruptcy court recognized that Kane's contract with the Sharks also permitted the Sharks to terminate Kane's services for or without cause. ZionsER-365.

On April 19, 2021, the bankruptcy court issued the Conversion Order, analyzing in detail Kane's assets and liabilities, income from the Sharks, and the provisions of Kane's contract with the Sharks; and properly considering Kane's ability to pay his creditors in Chapter 11, the possibility of immediate reconversion to Chapter 7, the likelihood of plan confirmation, and the benefit to creditors. ZionsER-360–387. Zions' timely appeal of the Conversion Order followed.

While this appeal was pending, the Sharks terminated Kane's contract on or about January 8, 2022. *See* Appellee's Request for Judicial Notice ("RJN"), filed herewith, Ex. 1. Kane was in the fourth year of his seven-year contract with the Sharks. The National Hockey League Players' Association (the "NHLPA") intends to pursue a grievance on behalf of Kane following the Sharks' termination of Kane's contract, but the outcome is unclear and Kane currently has no contract or the anticipated salary from the remainder of his deal with the Sharks. RJN, Ex. 2. Kane's professional prospects are uncertain.

1    **III.    JURISDICTION**

2           The District Court has jurisdiction over final orders under 28 U.S.C. § 158(a)(1), but

3    lacks jurisdiction to hear moot appeals. *United States v. Pattullo (In re Pattullo)*, 271 F.3d 898,

4    900 (9th Cir. 2001). If an appeal becomes moot while it is pending, the Court must dismiss it. *Id*.

5    This Court has jurisdiction to determine its jurisdiction. *See Hupp v. Educ. Credit Mgmt. Corp.*

6    *(In re Hupp)*, 383 B.R. 476, 478 (B.A.P. 9th Cir. 2008) (citing *Benny v. England (In re Benny)*,

7    812 F.2d 1133, 1136 (9th Cir. 1987)).

8    **IV.    LEGAL STANDARD**

9           Developments during the pendency of an appeal may render a case moot at any time. A

10   moot case is one where the issues presented are no longer live and no case or controversy exists.

11   *Pilate v. Burrell (In re Burrell)*, 415 F.3d 994, 998 (9th Cir. 2005). The test for mootness is

12   whether an appellate court can still grant effective relief to the prevailing party if it decides the

13   merits in his or her favor. *Id*. "An appeal is constitutionally moot when events occur during the

14   pendency of the appeal that make it impossible for the appellate court to grant effective relief."

15   *Collect Access LLC v. Hernandez (In re Hernandez)*, 483 B.R. 713, 719 (B.A.P. 9th Cir. 2012).

16          An appellate court may take judicial notice of events in the bankruptcy case or of matters

17   relevant to the appeal. Fed. R. Evid. 201; *O'Rourke v. Seabord Surety Co. (In re E.R. Fegert,*

18   *Inc.)*, 887 F.2d 955, 957-58 (9th Cir. 1989); *United States ex rel. Robinson Rancheria Citizens*

19   *Council v. Borneo, Inc*., 971 F.2d 244, 248 (9th Cir. 1992). The appellate court may also take

20   judicial notice of events in the bankruptcy case occurring after the filing of an appeal if they

21   would resolve the dispute between the parties. *Ellis v. Yu (In re Ellis)*, 523 B.R. 673, 676 (B.A.P.

22   9th Cir. 2014) (citing *Pitts v. Terrible Herbst, Inc*., 653 F.3d 1081, 1087 (9th Cir. 2011) ("[I]f

23   events subsequent to the filing of the case resolve the parties' dispute, we must dismiss the case

24   as moot.")).

25   **V.    LEGAL ARGUMENT**

26          It is not possible for this Court to grant effective relief to Zions, even if it were to prevail,

27   because the flawed assumption underpinning Zions' central argument for conversion – that Kane

28   stands to gross $29 million under this contract with the Sharks enabling him to fund a plan of

1   reorganization over the next five years if his case is converted to Chapter 11 – has been removed,

2   and Kane's future earning potential is uncertain. Thus, Zions' appeal is moot.

3          Zions repeatedly cites to Kane's contract with the Sharks, grossly exaggerating the fact

4   that the contract entitles Kane to post-petition salary and bonuses totaling $29 million.

5   Appellant's Opening Br., pp. 10, 14, 20, 21, 22, 24, 29, 33, 44, 45, 46. While Kane made a

6   significant sum as a hockey player with the Sharks, the bankruptcy court recognized in the

7   Conversion Order that Kane's actual income was far lower than the gaudy amounts presented by

8   Zions. Zions' overly simplistic figures in the Conversion Motion referenced only Kane's gross

9   salary and bonuses and failed to account for taxes and the many other deductions from Kane's

10  salary. By comparison, the Conversion Order analyzed Kane's assets and liabilities, income from

11  the Sharks, and the provisions of Kane's contract with the Sharks in exacting detail. On appeal,

12  Zions attempted to extrapolate from the record and argued that Kane can pay at least between

13  $3.298 million to $4.488 million from his $29 million contract even assuming COVID-19

14  restrictions continued for the duration of a five-year Chapter 11 plan, Kane's escrow deductions

15  are never repaid; and Kane's expenses are not reduced. Appellant's Opening Br., pp. 24-26, n.1.

16         In analyzing Kane's purported ability to pay his creditors, the bankruptcy court wisely

17  noted:

18         It is uncertain just how much of [Kane]'s salary will be available to fund a plan. And the
           structure of [Kane]'s salary means significant amounts will only be available to the estate
19         years after it was earned. . . . [Kane]'s long-term income stream as a player is not assured.
           So, [Kane]'s salary – while objectively significant – may not be as impactful as Zions
20         asserts.

21  ZionsER-373.

22         Further, in analyzing the likelihood of plan confirmation, the bankruptcy court raised

23  additional concerns about the nature of Kane's career and the reliance of a Chapter 11 plan on

24  Kane's continued ability to play hockey:

25         [N]o one discusses [Kane]'s ability to perform for years under Zion's hypothetical
           Chapter 11 plan. . . . The NHL Contract does not necessarily provide compensation to
26         [Kane]. If he is not fit to play. One is left to wonder how many more years [Kane] can
           reasonably be expected to play in such a physically demanding environment.
27
           . . .
28

> The uncertainty of [Kane]'s ability to perform as a professional athlete, and the possibility of injury taking him off the ice – temporarily or otherwise – mean the kind of long-term plan implied by Zions' request has serious feasibility concerns that will only grow as the years go by. . . . Zions makes much of [Kane]'s high income, but ignores the attendant uncertainty and risk his hockey career entails. . . .  [The bankruptcy court was] not convinced a plan so dependent on [Kane] continuing to play hockey for several years without interruption has a reasonable probability of success.

ZionsER-375, 377.

On appeal, Zions appears to suggest that Kane's contract "ensures" his $29 million salary and bonuses will continue to be paid even if Kane cannot play because of injury, Appellant's Br., p. 22; while completely ignoring the fact, as the bankruptcy court recognized, that the NHL Contract permitted the Sharks to terminate Kane's services for or without cause. As the Conversion Order explained:

> The NHL Contract permits the Sharks to terminate [Kane]'s services. If terminated without cause, [Kane] is entitled to a reduced salary payment extended over twice the length of the original agreement. [Internal citation omitted.] In other words, Debtor is paid some of what he would other be due under the agreement, but it is paid over a longer period of time. He is then an 'Unrestricted Free Agent' and no longer attached to the Sharks. On the other hand, if [Kane] is terminated for cause, he loses his right to compensation.

ZionsER-365.

The latter is exactly what has happened. On or about January 8, 2022, the Sharks terminated Kane's contract, allegedly for breach of contract and violating COVID-19 protocols. RJN, Ex. 1. The NHLPA intends to pursue a grievance on behalf of Kane following the Sharks' termination of the NHL Contract, but the outcome is unclear and Kane stands to lose gross compensation totaling $22.8 million from the remainder of his Sharks' contract. RJN, Ex. 2. What is clear, is it is not possible for this Court to grant effective relief to Zions because Zions cannot depend on Kane's terminated contract to fund a Chapter 11 plan. Indeed, Kane's professional prospects beyond the current season are uncertain. Were this Court to reverse the Conversion Order and remand the case to the bankruptcy court, there would be no basis to reconsider the Conversion Order because the underlying contract is gone.

## VI.   CONCLUSION

For the reasons set forth above, Kane requests that this Court dismiss Zions' appeal of the bankruptcy court's denial of its Conversion Motion as moot.

NOTICE OF MOTION AND APPELLEE'S MOTION TO DISMISS APPEAL                                          6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED: February 22, 2022                FINESTONE HAYES LLP


                                        By:   /s/ Stephen D. Finestone
                                              Stephen D. Finestone
                                              Ryan A. Witthans
                                              Attorneys for Appellee Evander Frank Kane

**PROOF OF SERVICE**

I am over the age of 18 and not a party to this action. My business address is 456 Montgomery Street, Floor 20, San Francisco, California 94104. I served a true and correct copy of the following document(s):

**NOTICE OF MOTION AND APPELLEE'S MOTION TO DISMISS APPEAL AS MOOT**

by the following means:

☒        **BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**. On February 22, 2022, I electronically filed the document(s) with the Clerk of the Court using the CM/ECF system. I received confirmation from the CM/ECF system that this filing caused links to such document(s) to be transmitted electronically to the parties registered, pursuant to General Orders and Local Rules, as NEF participants in this case at their respective notification addresses listed below.

- Michael G. Fletcher on behalf of Zions Bancorporation, N.A. mfletcher@frandzel.com

- Gerrick M. Warrington on behalf of Zions Bancorporation, N.A. gwarrington@frandzel.com

☐        BY U.S. MAIL. On February 22, 2022, I served the document to the following persons and/or entities at the notice address on the proof of claim filed by the creditor by placing a true and correct copy above-referenced document(s) in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 22, 2022 in San Francisco, California.

/s/ Stephen D. Finestone
_____
Stephen D. Finestone

NOTICE OF MOTION AND APPELLEE'S MOTION TO DISMISS APPEAL                    8