Stephen D. Finestone (125675)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, CA 94104
Tel.: (415) 421-2624
Fax: (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: rwitthans@fhlawllp.com

Attorneys for Appellee
Evander Frank Kane

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>EVANDER FRANK KANE,<br><br>Debtor. | Case No. 21-cv-03765-WHO<br><br>Bankruptcy Case No. 21-50028-SLJ<br>Chapter 7 |
| ZIONS BANCORPORATION, N.A.,<br>dba California Bank & Trust,<br><br>Appellant<br><br>v.<br><br>EVANDER FRANK KANE,<br>Appellee | **REPLY IN SUPPORT OF APPELLEE'S MOTION TO DISMISS APPEAL AS MOOT**<br><br>Hearing:<br>Date: March 30, 2022<br>Time: 2:00 p.m. Pacific Time<br>Place: Tele/Videoconference (Zoom)<br><br>**Remote appearances only.**<br><br>*Please check www.cand.uscourts.gov for information regarding the Court's operations due to the COVID-19 pandemic.* |

Appellee Evander Frank Kane ("Kane") submits the following reply to the opposition to his motion to dismiss this appeal filed by Appellant Zions Bancorporation, N.A. ("Zions").

**SUMMARY**

While the bankruptcy court's underlying decision is sound and Zions' appeal is without merit, Kane filed the instant motion to dismiss Zions' appeal as moot because the linchpin of its underlying case – Kane's long-term $29 million contract with the San Jose Sharks ("Sharks") –

no longer exists. Zions does not seriously dispute that the Sharks terminated Kane's contract. Instead, it asserts that this fact is not supported by credible or admissible evidence. Zions then argues that even if the Sharks contract no longer exists, Kane has the burden to prove that he has no other source of income that might fund a plan of reorganization and thereby justify conversion to Chapter 11. *See* ECF 16, at 2:12-18.

Zions' argument in the Motion to Convert was based solely on Kane's alleged ability to pay his creditors in a reorganization plan from his $29 million contract with the Sharks, Zions' ER-121–122; not a post-appeal contract or any possible future earnings that the bankruptcy court did not consider and is not properly before this Court. As such, Kane has met his burden to show that because of changed circumstances, the issues presented by this case are moot and this Court cannot fashion any effective relief on appeal.

## LEGAL ARGUMENT

### I. Zions' Evidentiary Objections Are Without Merit.

Federal Rule of Evidence ("FRE") 201 allows a court to take judicial notice of certain facts that are not subject to reasonable dispute. Fed. R. Evid. 201(b). A fact is not subject to reasonable dispute if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). Judicial notice is the court's recognition of the existence of a fact without the necessity of formal proof. *See Castillo-Villagra v. I.N.S.*, 972 F.2d 1017, 1026 (9th Cir. 1992).

Zions' objections to the Court taking judicial notice of Exhibits 1 (a printout of a statement from the San Jose Sharks on January 8, 2022, from the Sharks' page on the NHL website) and 2 (a printout of a news article dated January 10, 2022 published on *The Athletic*'s website) are without merit. Zions contends the exhibits are not credible and are inadmissible because they supposedly have not been authenticated and are hearsay to the extent they are offered for the truth of the statements made in the documents. The exhibits are offered for the widely known fact that the Sharks had decided to terminate Kane's contract and the millions of dollars that Zions relied upon to fund a reorganization plan if Kane's case was converted to

Chapter 11. The two exhibits included in Kane's *Request for Judicial Notice* are judicially noticeable documents.[1]

As the court in *Threshold Enters. v. Pressed Juicery, Inc*., 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020), recently noted, "[i]n general, websites and their contents may be judicially noticed." Courts in the Ninth Circuit routinely take judicial notice of press releases such as the Sharks' statement for the purpose of noting the existence of the press release's message. *See, e.g*., *Loran Group v. Peregrine Sys. (In re Peregrine Sys.)*, 310 F. App'x 149, 151 (9th Cir. 2009) (in a securities fraud case, taking judicial notice of press releases issued to the investing public informing the public of a business partnership); *In re Tourism Assessment Fee Litig*., 2009 U.S. Dist. LEXIS 133339, at *13 (S.D. Cal. Feb. 19, 2009), *aff'd sub nom*, *Tourism Assessment Fee Litig. v. Avis Budget Group, Inc*., 391 F. App'x 643 (9th Cir. 2010) (taking judicial notice of press release printed from a website because the "[c]ourt was able to access the website and confirm the accuracy of this exhibit's content."); *Strojnik v. Kapalua Land Co*., 379 F. Supp. 3d 1078, 1080 n.1 (D. Haw. 2019) (taking judicial notice of a State Bar of Arizona press release because it was publicly available on its website and is "not subject to reasonable dispute.") Moreover, facts that become widely known through news or other announcements, including on online publications such as *The Athletic*, are subject to judicial notice. *See Ritter v. Hughes Aircraft Co*., 58 F.3d 454, 458-59 (9th Cir. 1995) (taking judicial notice of newspaper article regarding widespread layoffs because the layoffs were "a fact which would be generally known in Southern California and which would be capable of sufficiently accurate and ready determination").

Zions' challenge to the authenticity of the exhibits is disingenuous. FRE 902(6) provides that newspapers and periodicals are self-authenticating and require no extrinsic evidence of authenticity in order to be admitted. *The Athletic* is a reputable online sports news publication that is available to the public, and the link to the news article published on its website of which

[1] Indeed, the evidence Zions submits in support of its opposition, establishing that Kane now plays for the Edmonton Oilers, is further proof of the point raised in the motion to dismiss. *See* ECF 16-1.

Kane seeks judicial notice is accessible by the Court to confirm the accuracy of this exhibit's content. Similarly, the statement by the Sharks announcing that they had placed Kane on unconditional waivers and were terminating his contract "for breach of his NHL Standard Player Contract" appears on the Sharks' page on the NHL website, and the link to the statement is available to the Court to confirm the accuracy of the exhibit's content.

Next, Zions argues over the wording in the exhibits' content by suggesting the Sharks' statement on January 8, 2022, only evince their "intent" to terminate Kane's contract, and *The Athletic* article reported that Kane had cleared unconditional waivers "clearing the way" for the Sharks to terminate Kane's contact; not that Kane's contract was terminated for cause. ECF 16, at 4:1-11. But *The Athletic* article published on January 10, 2022, clearly reported on the Sharks' "termination" of Kane's contract and both the Sharks' statement and *The Athletic* article confirm the stated reason for termination was Kane's alleged breach of his NHL standard player contract.

In *Khoja v. Orexigen Therapeutics*, 899 F.3d 988 (9th Cir. 2018), the Ninth Circuit clarified the judicial notice rule and incorporation by reference doctrine. If a court takes judicial notice of a document, it must specify what facts it judicially noticed from the document. *Id*. at 999. The fact that the Sharks terminated Kane's contract is a fact that is not subject to reasonable dispute in that it is generally known in Northern California, where Kane played professional hockey since 2018, and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. While the Court may not judicially notice the truth of the facts asserted in Kane's exhibits, the Court may consider the Sharks' statement and *The Athletic* article for the fact that the Sharks decided to terminate Kane's contract. *See*, *e.g*., *CarrAmerica Realty Corp. v. nVidia Corp*., 2010 U.S. Dist. LEXIS 64378, at *11 n.3 (N.D. Cal. June 29, 2010) (granting request for judicial notice of a press release over hearsay objections because the release was "not admitted for the truth of its contents, but to show that" there was "no attempt to conceal the[] plans from the public"); *2die4kourt v. Hillair Capital Mgmt*., LLC, 2016 U.S. Dist. LEXIS 118211, at *1 n.1 (C.D. Cal. Aug. 23, 2016) (taking judicial notice of online news articles and social media posts "solely for their existence and content, and not for the truth of any statements in the documents."). Kane's exhibits are not hearsay.

**II. This Court Cannot Fashion Any Effective Relief on Appeal.**

Zions' argument in the Motion to Convert relied *only* on Kane's ability to pay his creditors in a hypothetical Chapter 11 case. Zions' ER-121–122. The Motion to Convert contended that "the real driving force for creditor recoveries would be from a chapter 11 plan that brings into its ambit Kane's $29 million in salary and bonus expectations." Zions' ER-122, at 15:7-9. Zions reiterates the argument in its opening brief on appeal that as of the date of Kane's Chapter 7 filing, "he was to receive gross salary and signing bonus payouts post-bankruptcy totaling $29 million under his [Sharks] NHL Contract," and "Zions filed its Motion to Convert the Kane chapter 7 bankruptcy to chapter 11, *principally to bring Kane's $29 million salary into the bankruptcy case*." ECF 5, at 14, 20 (emphasis added). Indeed, Zions' principal argument on appeal is that the record reflected Kane's purported ability to pay from his $29 million contract with the Sharks at least $3.298 million to $4.488 million to unsecured creditors, after allowing for Kane's scheduled expenses, over a five-year period. ECF 5, at 24-26. Without the Sharks contract, Zions' argument about Kane's ability to pay through a Chapter 11 plan is no longer possible.

While the bankruptcy court's denial of the Motion to Convert was correct, now that the Sharks contract is gone, this Court cannot grant any effective relief to Zions on appeal. Kane no longer has the stream of income that Zions argued would be available to fund a reorganization plan over the next five years if this case were converted to Chapter 11. A similar situation occurred in *Mariah Bay Leasing Corp. v. Credit Union Liquidity Servs*., 2011 U.S. Dist. LEXIS 70580, at *10 (N.D. Tex. June 29, 2011). There the district court, considering an appeal from the denial of confirmation of a Chapter 11 reorganization plan, held the fact that the debtor's reorganization plan relied on real property that the debtor no longer owned provided a basis to moot the issues raised on appeal. *Id*. at *1-4. The debtor failed to confirm a reorganization plan by a certain date, which triggered a stipulated order granting the secured creditor relief from the automatic stay to foreclose on the property. *Id*. at *2-3. The bankruptcy court subsequently converted that case from Chapter 11 to Chapter 7 on the secured creditor's motion and denied confirmation of the debtor's plan. *Id*. at *3. The debtor appealed but the district court determined

that the post-decision foreclosure on the property prevented consummation of the proposed reorganization plan because the debtor could not reorganize based on property it did not own. *Id.* at *9-10.

Similarly, while Kane obviously believes affirmance of the bankruptcy court's ruling is in order, were this Court to reverse the *Order Denying Motion to Convert* (the "Conversion Order") and remand this case to the bankruptcy court, there would be no basis to reconsider the Conversion Order because the underlying contract is gone. Speculation about what contract Kane might obtain in the future is legally irrelevant. Rather than respond to the issue raised by Kane's motion, Zions argues that Kane does not address whether he receives income from other sources, and what his net compensation and expenses will be. Zions' argument misses the point. The entire factual basis for its Motion to Convert no longer exists. A Chapter 7 filing presents a snapshot in time and that snapshot, if the case were sent back to the bankruptcy court, no longer includes the Sharks contract.

Zions cannot seriously dispute the fact that Kane lost his contract with the Sharks but argues that this Court can still provide it with some relief because "upon conversion Kane's earnings from any source—including other NHL teams and under different NHL contracts—would constitute property of the chapter 11 estate and could be used to fund a chapter 11 plan to pay creditors." ECF 16, at 2:13-18. In support of its argument, Zions submits the declaration of Debra Gray, an employee of Zions' counsel, who stated she "saw Kane skate for, and score a goal for, the Edmonton Oilers ("Oilers")" during a hockey game on February 15, 2022. ECF 16-1, at ¶¶ 3-4. Kane has no objection to this Court taking judicial notice of his short-term contract with the Oilers, which expires at the end of the current season. However, the Oilers contract was not part of the set of facts that the bankruptcy court considered in denying the Motion to Convert. More importantly, it is not a contract that could form a basis for a Chapter 11 conversion, an argument noticeably absent from Zions' opposition.

Zions' argument on appeal puts the cart before the horse by asserting this Court can fashion a remedy that assumes Kane's earnings from *any* source could be used to fund a Chapter 11 plan to pay creditors without weighing the interests of the parties to determine whether

conversion is appropriate in the first place.[2] Again, Zions fails to explain what relief this Court could fashion if it were to reverse the Conversion Order and remand this case to the bankruptcy court.

## CONCLUSION

For the reasons set forth above, Kane requests that this Court dismiss Zions' appeal of the bankruptcy court's denial of the Conversion Motion as moot.

DATED: March 18, 2022

FINESTONE HAYES LLP

By: /s/ Stephen D. Finestone
Stephen D. Finestone
Attorneys for Appellee Evander Frank Kane

---

[2] A speculative possibility is not a basis for retaining jurisdiction over a moot case. *Cf. Van Bergen v. Minnesota*, 59 F.3d 1541, 1547 (8th Cir. 1995) ("The party need not show with certainty that the situation will recur, but a mere physical or theoretical possibility is insufficient to overcome the jurisdictional hurdle of mootness.").