UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZIONS BANCORPORATION, N.A., <br><br> Plaintiff, <br><br> v. <br><br> EVANDER FRANK KANE, <br><br> Defendant. | Case No. 21-cv-03765-WHO <br><br> **ORDER DENYING MOTION TO DISMISS** <br><br> Re: Dkt. No. 12 |

Evander Frank Kane, a professional hockey player who filed for bankruptcy last year, moves to dismiss a pending appeal of the bankruptcy court's decision not to convert his Chapter 7 case to a Chapter 11 case. Kane contends that because his long-term, multi-million dollar contract with the San Jose Sharks was recently terminated, appellant Zions Bancorporation, N.A. ("Zions"), can no longer rely on the contract in arguing that the case should be converted.[1] Without the Sharks contract, Kane argues, this court cannot grant Zions effective relief.

Kane's motion to dismiss is DENIED. Kane has signed a short-term contract with another professional hockey team. Although that contract may be worth less than his contract with the Sharks, it provides some effective relief that may be granted to Zions.

## BACKGROUND

Kane filed for Chapter 7 bankruptcy on January 9, 2021, stating that he owned $10,224,743.65 in property and owed $30,191,340 in liabilities. Mot. to Dismiss ("MTD") [Dkt. No. 12] 2:21-23; Order Denying Mot. to Convert ("Conversion Order") [Dkt. No. 1-1], Ex. 1 2:19-

---

[1] Kane makes the same motion in *South River Capital, LLC v. Kane*, No. 21-CV-03493-WHO (filed May 10, 2021), which involves a separate appeal of the same bankruptcy court decision by another creditor. There is significant overlap between the arguments raised in the two motions to dismiss. I deny the *South River* motion for the same reasons articulated here.

21. At the time he filed for bankruptcy, Kane was in his third year of a seven-year contract with the San Jose Sharks. *See* MTD at 3:21-23.

After Kane filed his Chapter 7 petition, Zions moved to convert the case under Chapter 11. *See id*. at 2:16-20. The crucial difference between a Chapter 7 case and a Chapter 11 case is that in Chapter 7, a debtor retains his post-petition income, while in Chapter 11, that income becomes part of the bankruptcy estate. *See* Conversion Order at 1:20-2:1. At stake in Kane's case: his earnings under the remainder of his contract with the Sharks, which Zions estimated at $29 million.[2] *See* MTD at 5:3-4. It argued that Kane could pay creditors at least $3.298 million from a $29 million contract under a five-year Chapter 11 plan. *Id*. at 5:11-15.

The bankruptcy court denied the motion on April 19, 2021, which Zions appealed. *See* Dkt. Nos. 1, 5. The appeal takes several issues with the bankruptcy court's decision, including whether it erred by concluding that the benefit of conversion to creditors was unproven given Kane's contract with the Sharks. *See* Dkt. No. 5 at 10-12. That contract, Zions contends, spoke to Kane's ability to pay his creditors "several millions of dollars" in a Chapter 11 plan. *See id*. at 24.

On or about January 8, 2022, while Zions's appeal was pending, the Sharks terminated Kane's contract.[3] MTD at 3:21-27. He then signed a one-year contract with the Edmonton Oilers.[4] *See* Reply [Dkt. No. 17] 6:21-22.

---

[2] Kane disputes this number, saying it overlooks taxes, deductions, and other adjustments, and that his salary depended on his ability to play hockey. *See* MTD at 5:3-6:5.

[3] Kane requests that I take notice of two exhibits: a San Jose Sharks statement that the team intended to terminate Kane's contract and an article from The Athletic, a sports news website. Req. for Judicial Notice ("RJN") [Dkt. No. 13] Exs. 1, 2. I will take notice of the first, as the facts within the statement can be accurately and readily determined from a source (the team website) whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b)(2). But notice of the news article is inappropriate because Kane effectively proffers it for the truth of the content within (i.e., that he "stands to lose gross compensation totaling $22.8 million from the remainder of his Sharks' contract"), not for what was in the public realm at the time. *See* MTD at 6:19-20; *see also Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true."). Moreover, this fact is subject to reasonable dispute. *See* Fed. R. Evid. 201(b).

[4] Kane did not disclose playing with the Oilers in his motion to dismiss. *See generally* MTD. In his reply, he acknowledges his "short-term contract with the Oilers, which expires at the end of the current season." Reply at 6:21-22.

1    Kane filed this motion to dismiss on February 22, 2022. Dkt. No. 12. Pursuant to Civil
2    Local Rule 7-1(b), I deemed it appropriate for resolution without oral argument.

### LEGAL STANDARD

"The test for mootness of an appeal is whether the appellate court can give the appellant any effective relief in the event that it decides the matter on the merits in his favor. If it can grant such relief, the matter is not moot." *In re Burrell*, 415 F.3d 994, 998 (9th Cir. 2005) (citing *Garcia v. Lawn*, 805 F.2d 1400, 1402 (9th Cir. 1986)); *see also In re Pattullo*, 271 F.3d 898, 901 (9th Cir. 2001) ("If an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal is moot and must be dismissed.") (citations omitted). "[W]hile a court may not be able to return the parties to the status quo ante, an appeal is not moot if the court can fashion *some* form of meaningful relief." *In re Pattullo*, 271 F.3d at 901 (citations omitted) (emphasis in original). The party asserting mootness has the "heavy burden" of showing there is no effective relief for the court to provide. *Suter v. Goedert*, 504 F.3d 982, 986 (9th Cir. 2007) (citation omitted).

### DISCUSSION

Kane's motion to dismiss is nearly identical to the one he filed in the *South River* case, with the same primary argument: because the Sharks contract was terminated, and because Zions relied on that contract to fund a Chapter 11 plan, the court cannot grant effective relief, and Zions's appeal is thus moot. *See* MTD at 6:16-25. Zions attacks the motion on evidentiary grounds before turning to the merits. *See* Oppo. [Dkt. No. 16] 3-6.

Zions first argues that Kane has not met his heavy burden of proof because he has not proffered admissible evidence that his Sharks contract was terminated for cause or that he lost $22.8 million as a result. *See id*. at 4:1-11. As I explained above, I will take notice only of the San Jose Sharks statement and the underlying fact that the team intended to terminate Kane's contract. Zions is correct that the statement only expresses the team's intent and does not confirm that Kane's contract was actually terminated for cause. *See* Oppo. at 4:1-5. But Zions does not dispute that Kane no longer plays for the Sharks, as evidenced by the declaration it submitted stating that he was seen playing for the Edmonton Oilers during a February 15, 2022, hockey

3

1  game between the Oilers and the Los Angeles Kings.  *See id*. at 5:18-20 (citing Gray Decl.).  Kane
2  also confirms his "short-term contract with the Oilers."  Reply at 621-22.  The amount of post-
3  petition money available to Kane (and to his creditors in a Chapter 11 plan) is both disputed (as
4  the parties contest whether he in fact lost $22.8 million from the Sharks contract) and unclear (as
5  neither party proffers the financial terms of the Oilers contract).  But it is apparent that he now
6  plays for a different hockey team.  Common sense suggests that his financial situation has
7  changed.

8        Zions's second argument is more compelling.  It contends that Kane failed to address
9  whether he would earn income from other sources, including by playing hockey for other
10 professional teams.  *See* Oppo. at 5:15-20.  Zions contends that whether Kane's income from the
11 Sharks "has been reduced or lost altogether . . . does not necessarily support the assertion that
12 Kane could not fund a Chapter 11 plan," as all of his post-petition compensation would constitute
13 property of the bankruptcy estate.  *See id*. at 5:24-6:1.  According to Zions, it therefore is not
14 impossible for the court to grant it effective relief.  *Id*. at 6:8-11.

15       Kane is correct that the $29 million purportedly available under his Sharks contract
16 factored into the motion to convert, the Conversion Order, and the arguments on appeal.  But just
17 because that stream of income is no longer available does not mean there is *no* stream of income
18 available, as evidenced by his new contract with the Oilers.  He also misses two key points:  he
19 earned some money from the Sharks before his contract was terminated, and there is a still-
20 pending grievance that could impact the money available to him post-termination.  Taken together,
21 this shows that there is some effective relief that would be available to Zions in a Chapter 11 plan.

22       Again, the case that Kane primarily relies upon is distinguishable.  *See* Reply at 5:16-6:3.
23 The Northern District of Texas dismissed as moot an appeal of a denial of a Chapter 11
24 reorganization plan in part because the plan relied upon a property that the debtor no longer owned
25 because of foreclosure.  *Mariah Bay Leasing Corp. v. Credit Union Liquidity Servs., Inc.*, No. 11-
26 CV-029, 2011 WL 2586761, at *4 (N.D. Tex. June 29, 2011).  The *Mariah Bay* court noted that
27 the debtor had agreed to the order that authorized the foreclosure, "ending any possible claim it
28 has to ownership" of the property.  *Id*.  Therefore, the court held, there was "no basis to reverse the

United States District Court
Northern District of California

effect" of the order. *Id*. By contrast, Kane asserts that the National Hockey League Players' Association "intends to pursue a grievance" on his behalf following the Sharks' termination of his contract. MTD at 3:23-25. The outcome may impact the amount of money available to Kane and thus, to his creditors in a Chapter 11 plan.

The Ninth Circuit has set a high bar for dismissing an appeal as moot, as evidenced by the language of the relevant cases (i.e., that an event must make it "*impossible* for the court to grant *any* effectual relief whatever") and the heavy burden the party asserting mootness must meet in establishing this. *In re Pattullo*, 271 F.3d at 901 (emphasis added); *Suter*, 504 F.3d at 986. Kane has not met this bar. At most, he has shown that there is less post-petition income that would be available to creditors in a Chapter 11 plan. But he has not met his burden of showing that it would be impossible for me to grant *any* effective relief.

## CONCLUSION

Kane's motion to dismiss the underlying appeal as moot is DENIED.

**IT IS SO ORDERED.**

Dated: April 5, 2022

William H. Orrick
United States District Judge